UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Bhavi Shah,

Plaintiff,

v.

FCA US LLC, ET AL.,

Defendants.

Case No. 18-cv-13858

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

_____/

# OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS [#12]

## I. INTRODUCTION

Before the Court is Defendant's Motion for Judgment on the Pleadings. Defendant FCA US, LLC moves this Court to dismiss Plaintiffs' discrimination complaint against it. For the reasons discussed below, this Court will grant Defendant's Motion and dismiss Plaintiff's complaint against all Defendants.

## II. FACTUAL BACKGROUND

Plaintiff Bhavi Shah became an employee of Defendant FCA US, LLC ("FCA") around 2014. Dkt. No. 1, pg. 4 (Pg. ID 65). Before that, she was employed by FCA's predecessors. *Id.* Plaintiff signed an employment application on June 19, 1996 with FCA's predecessors in which she agreed "that any claim or

-1-

lawsuit arising out of [her] employment . . . must be filed no more than six (6) months after the date of the employment action that is the subject of the claim or lawsuit." Dkt. No. 11-5, pg. 3 (Pg. ID 205). Plaintiff is of Asian race and Indian national origin. Dkt. No. 1, pg. 2 (Pg. ID 63). Defendant Daquanda Flowers became Plaintiff's direct supervisor in early 2017. *Id.* at pg. 6 (Pg. ID 67). In May of 2015, Plaintiff was diagnosed with diabetic retinopathy edema. *Id.* at pg. 5 (Pg. ID 66). This condition requires Plaintiff to receive an injection once a month and have a day of recovery time. *Id.* Plaintiff alleges that her supervisor before Flowers allowed her the accommodation of working from home on days of her injections and the day after for the recovery time. *Id.* at pg. 6 (Pg. ID 67). However, Flowers would not allow Plaintiff this accommodation. *Id.* Therefore, Plaintiff worked with the human resources department to get the accommodation approved. *Id.* When it was approved, Plaintiff alleges that Flowers was "furious" and began to shun her, give her icy stares, and/or verbally assault and berate Plaintiff. *Id.* at pg. 7 (Pg. ID 68).

On January 12, 2018, Plaintiff alleges that she met with the head of human resources at FCA, Defendant Charlie Stein. *Id.* at pg. 10 (Pg. ID 71). She alleges that she complained to Stein about the discriminatory and retaliatory conduct that Flowers was subjecting her to. The complaint asserts that Stein indicated that he

would conduct an investigation and get back to Plaintiff with his findings. *Id.* at pg. 11 (Pg. ID 72).

Plaintiff states that on March 12, 2018, after she returned from medical leave for eye surgery, Flowers "unleashed a fury on her" in retaliation for her complaint to human resources and for taking medical leave. *Id.* at pg. 12 (Pg. ID 73). Plaintiff alleges that Flowers retaliated against her by giving her a very low bonus for 2017, $782.00. *Id.* Additionally, Flowers allegedly gave Plaintiff a low performance review in retaliation. *Id.* at pg. 13 (Pg. ID 74).

On March 12, 2018, Plaintiff met with Defendant Stein to follow up about her complaints against Flowers. *Id.* at pg. 12 (Pg. ID 73). Stein informed Plaintiff that Flowers' conduct was not found to be retaliatory or racially motivated under FCA's policy. *Id.* at pg. 13 (Pg. ID 74). Stein also informed Plaintiff that FCA would not be removing her from Flowers' supervision. *Id.*

On May 7, 2018, Flowers and Stein met with Plaintiff and presented her with a Performance Improvement Plan ("PIP"). *Id.* at pg. 17 (Pg. ID 78). The PIP included over 60 bullet points of actions for Plaintiff to perform in order to meet her 2017 goals. *Id.* at pg. 41 (Pg. ID 102). Flowers created the PIP with the approval of Stein. *Id.* at pg. 18 (Pg. ID 79). Plaintiff alleges that the PIP was bogus, onerous, unreasonable, and retaliatory. *Id.* Plaintiff complained to Stein that she

believed the PIP requirements were unrealistic. *Id.* Stein informed Plaintiff that following the PIP was her only recourse. *Id.* at pg. 19 (Pg. ID 80). Plaintiff then told Stein that if Flowers and FCA were setting her up to fail with the PIP, FCA should give her a fair severance package. *Id.*

Plaintiff took some vacation days and returned to work on May 21, 2018. *Id.* at pg. 20 (Pg. ID 81). That same day, Stein emailed Plaintiff and stated that he had a severance package ready for Plaintiff to review. *Id.* Stein told Plaintiff that she had 21 days to accept or reject it. *Id.* Plaintiff reviewed the package and did not think it was fair. *Id.* at pg. 21 (Pg. ID 82). She informed Stein that she would therefore need to continue her employment with FCA. *Id.* Defendant did not continue Plaintiff's employment and terminated Plaintiff on May 23, 2018. Dkt. No. 1, pg. 21 (Pg. ID 82).

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 30, 2018. Dkt. No. 11-2, pg. 2 (Pg. ID 198). The charge states that during Plaintiff's employment, Defendants subjected her to different treatment than her Caucasian colleagues. *Id.* It states that Plaintiff's believes that she was subjected to different treatment because of race, national origin, disability, and in retaliation for engaging in protected activity. *Id.* The EEOC issued Plaintiff a Dismissal and Notice of Rights letter on September 24, 2018. Dkt. No. 11-3, pg. 2 (Pg. ID 200).

Plaintiff filed her *pro se* complaint with this Court on December 12, 2018. Dkt. No. 1. Defendant filed the present Motion for Judgment on the Pleadings on February 6, 2019. Dkt. No. 12. A representative for Plaintiff contacted this Court on February 27, 2019 requesting an extension to respond to Defendant's Motion because Plaintiff was attempting to obtain counsel. Defendant did not oppose the extension. Accordingly, this Court granted Plaintiff an extension of three weeks to respond to Defendant's Motion. Dkt. No. 14. On March 22, 2019, this Court granted Plaintiff a second three-week extension to respond to the Motion. Dkt. No. 15. Plaintiff has failed to file a response. On June 12, 2019, this Court held a motion hearing on Defendant's Motion. Plaintiff did not appear for the motion hearing.

### III. Legal Standard

Federal courts review motions for judgment on the pleadings brought pursuant to Fed. R. Civ. P. 12(c) using the standards applicable to motions filed under Rule 12(b)(6). *See Wee Care Child Ctr., Inc. v. Lumpkin*, 680 F.3d 841, 846 (6th Cir. 2012). Though litigants employ these procedural mechanisms at different stages of the proceedings, the purpose of both motions is to test the legal sufficiency of a plaintiff's pleadings. Thus, as with Rule 12(b)(6) motions, a Rule 12(c) motion allows a court to make an assessment as to whether a plaintiff has stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

As articulated by the Supreme Court of the United States, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). This facial plausibility standard requires claimants to put forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the requisite elements of their claims. *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1965. Even though a complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965) (internal citations omitted).

While courts are required to accept the factual allegations in a complaint as true, *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965, the presumption of truth does not apply to a claimant's legal conclusions, *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. Therefore, to survive a motion to dismiss, a plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters*, 502

F.3d at 548 (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964–65)) (internal citations and quotations omitted).

In addition to evaluating the sufficiency of the factual allegations within the four corners of a complaint, courts may consider any exhibits attached to the complaint, matters of public record, and exhibits attached to a defendant's 12(b)(6) motion, provided that the latter are referred to in the complaint and are central to the claims therein. *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir.2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.2001)). In the present case, the Court has considered documents attached to Plaintiff's complaint and Defendant's answer.

## IV. Discussion

1. Statute of Limitations

First, Defendant FCA argues that Plaintiff's lawsuit is barred because she signed a contract with Defendant's predecessor barring suits filed more than six months after the alleged employment actions. Dkt. No. 12, pg. 12 (Pg. ID 217). Defendant terminated Plaintiff on May 23, 2018. Dkt. No. 1, pg. 21 (Pg. ID 82). Plaintiff filed suit in this Court on December 12, 2018—approximately 8.5 months after her termination.

The Sixth Circuit allows contractual agreements that shorten an employee's limitations period for claims arising under Title VII. *See Boaz v. FedEx Customer Info. Servs., Inc.*, 725 F.3d 603, 606 (6th Cir. 2013). The Sixth Circuit also allows for contractual limitations periods that shorten an employee's limitations period for disability claims. *Steward v. New Chrysler*, 415 F. App'x 632, 638 (6th Cir. 2011) (allowing a contractual statute of limitations of six months for plaintiff's ADA claims and state disability claims); *Myers v. Western-Southern Life Ins. Co.*, 849 F.2d 259, 262 (6th Cir. 1988) (allowing a contractual statute of limitations of six months for a disability claim brought under the Michigan Civil Rights Act).

Here, Plaintiff signed an employment application in which she agreed "that any claim or lawsuit arising out of [her] employment . . . must be filed no more than six (6) months after the date of the employment action that is the subject of the claim or lawsuit." Dkt. No. 11-5, pg. 3 (Pg. ID 205). Plaintiff brings claims for various actions that occurred during her employment with Defendants and for her termination. Therefore, the last employment action that could be subject to her claims occurred on her termination date—May 23, 2018. Under her employment agreement, Plaintiff had until November 23, 2018 to file any lawsuits. Plaintiff did not file suit in this matter until December 12, 2018. Dkt. No. 1. For this reason, the Court finds that Plaintiff is contractually barred from bringing her claims.

2. Title VII and ADA claims

Defendant FCA next asserts that Plaintiff cannot bring some of her claims under Title VII and the ADA because she did not include them in her EEOC charge. Dkt. No. 12, pg. 15 (Pg. ID 220). Defendant states that Plaintiff did not allege anything regarding her termination nor did she allege that her employers perceived her as disabled and that Flowers retaliated against her for requesting accommodations. *Id.* at pg. 14–15 (Pg. ID 221–22). Therefore, she cannot bring suit for claims regarding these allegations. *Id.*

The jurisdiction of the district court is "limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Johnson v. Cleveland City Sch. Dist.*, 344 F. App'x 104, 109 (6th Cir. 2009) (quoting *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991)). A plaintiff can initiate a lawsuit based on a charge not claimed with the EEOC "if it was reasonably within the scope of the charge filed." *Johnson*, 344 F. App'x at 109. "The Sixth Circuit interprets the scope of a charge liberally where the plaintiff was not assisted by counsel in drafting the charge." *Id.*

Here, Plaintiff's EEOC charge alleges that Defendants were aware of Plaintiff's disability. Dkt. No. 11-2, pg. 2 (Pg. ID 198). It also asserts that Defendants subjected Plaintiff to increased scrutiny—such as reprimanding her in front of colleagues and denying her requests to work from home. *Id.* Next, Plaintiff states

that she made a complaint of race and national origin discrimination to Human Resources and she was subsequently given the lowest performance review of her career. *Id.* The charge further states,

> I believe I have been subjected to different terms and conditions of employment due to my race, Asian; national origin, Indian; disability and in retaliation for engaging in a protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended and the Americans with Disabilities Act of 1990, as amended.

*Id.*

Plaintiff's EEOC charge alleged that Defendants knew of her disability and that they refused to allow her to work from home—an accommodation Plaintiff requested based on her need to get eye injections for her disability. The charge does not mention her termination. Plaintiff's EEOC charge claims that Defendants perceived her as disabled and that they refused to allow her to work from home, which was an accommodation request. Therefore, unlike what Defendant asserts, Plaintiff's EEOC charge does allege that Defendants perceived her as disabled. The charge does not explicitly state that Flowers retaliated against Plaintiff for requesting accommodations. The charge does allege that Defendants refused Plaintiff the accommodation of working from home and that Defendants retaliated against Plaintiff for complaining about race and national origin discrimination. Thus, an EEOC investigation of these claims in the charge would reasonably lead to an

investigation into Defendant Flowers retaliating against Plaintiff for requesting accommodations.

Lastly, although Plaintiff did not reference her termination in the charge, an EEOC investigation of the claims that Plaintiff did make would reasonably lead to an investigation into her termination.

Plaintiff filed her Charge of Discrimination with the EEOC without the assistance of counsel. Therefore, this Court will interpret the charge liberally and finds that Plaintiff would not be barred from bringing suit for all of the allegations in her complaint. However, as analyzed above, Plaintiff's claims are nonetheless barred because she failed to meet the contractual statute of limitations.

3. Title VII and ADA Claims Against Individual Defendants

Lastly, Defendant FCA contends that this Court should dismiss Plaintiff's Title VII and ADA claims against the individual Defendants.

"[A]n individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997). This holding also extends to individual liability under Title VII's "sister civil rights statutes." *Hiler v. Brown*, 177 F.3d 542, 546 (6th Cir. 1999) (concluding that the plaintiff could not sue individual supervisors under the Rehabilitation Act).

Here, the Plaintiff brings claims against individual Defendants Daquanda Flowers and Charlie Stein in their corporate and individual capacities. Following the conclusions of the *Wathen* and *Hiler* courts, this Court concludes that Plaintiff may not bring her Title VII and ADA claims against Flowers and Stein in their individual capacities. However, as analyzed above, all of Plaintiff's claims are nonetheless barred because she failed to meet the contractual statute of limitations.

4. State Law Claims

Count IV of Plaintiff's complaint alleges intentional infliction of emotional distress against all Defendants. Dkt. No. 1, pg. 29 (Pg. ID 90). Count V alleges negligent infliction of emotional distress against all Defendants. *Id.* at pg. 31 (Pg. ID 92). This Court has dismissed all of Plaintiff's claims against Defendant FCA for failure to meet the contractual statute of limitations. This Court has also dismissed Plaintiff's Title VII and ADA claims against Flowers and Stein in their individual capacities. Because this Court has dismissed FCA as a Defendant, it will also dismiss Defendants Flowers and Stein in their corporate capacities. Thus, the only claims that remain in this action are Counts IV and V against Flowers and Stein in their individual capacities.

Count IV of Plaintiff's complaint alleges intentional infliction of emotional distress. In Michigan, "[t]o establish a prima facie case of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct, (2)

-12-

intent or recklessness, (3) causation[,] and (4) severe emotional distress." *Watkins v. City of Southfield*, 221 F.3d 883, 890 (6th Cir. 2000) (quoting *Roberts v. Auto-Owners Ins. Co.*, 374 N.W. 2d 905, 908 (1985)). Conduct must be so "outrageous" and "extreme" "as to go beyond all possible bounds of decency" and must be "intolerable in a civilized community." *Id.*

Here, Plaintiff's complaint states that Defendants subjected her to extreme and outrageous conduct that caused her severe emotional distress. Dkt. No. 1, pg. 30 (Pg. ID 91). Plaintiff's allegations against Defendants include claims that Flowers shunned her, gave her icy stares, and/or verbally assault and berated her; that Flowers and Stein implemented a Performance Improvement Plan for her to follow that was "bogus" and "unreasonable"; and that Stein declined to remove Plaintiff from Flowers' supervision when she made a complaint with him. Neither these allegations nor any of the similar allegations that Plaintiff brings against Defendants establish that Defendants subjected Plaintiff to outrageous conduct that went beyond all possible bounds of decency. For these reasons, the Court will dismiss Count IV of Plaintiff's complaint against Flowers and Stein.

Count V of Plaintiff's complaint alleges negligent infliction of emotional distress. Michigan courts only apply the tort of negligent infliction of emotional distress to situations "where a plaintiff witnesses negligent injury to a third person and suffers mental disturbance as a result." *Duran v. Detroit News, Inc.*, 504

N.W.2d 715, 720 (Mich. Ct. App. 1993); *see also Hesse v. Ashland Oil, Inc.*, 642 N.W.2d 330, 337 (Mich. 2002) (stating that negligent infliction of emotional distress applies when serious injury is inflicted on a person who is not the plaintiff).

Plaintiff's complaint states that Defendants' conduct was negligent and caused her severe emotional distress. Dkt. No. 1, pg. 31 (Pg. ID 92). Plaintiff's complaint does not allege that Defendants Flowers and Stein inflicted injury on a third person. Therefore, the tort of negligent infliction of emotional distress is not applicable to Plaintiff's allegations and the Court will dismiss Count V of Plaintiff's complaint.

### V. CONCLUSION

For the reasons discussed herein, the Court will grant Defendant's Motion. This Court will also dismiss individual defendants Flowers and Stein. Therefore, the entirety of Plaintiff's complaint is dismissed.

SO ORDERED.

Dated: June 12, 2019

s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, June 12, 2019, by electronic and/or ordinary mail.

s/Teresa McGovern<br>Case Manager